UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ADVANCED VOICE COMMUNICATIONS, INC.

    V.                                    C.A. 09-56ML

RUSSELL GAIN d/b/a WIDMORE ENTERPRISES
d/b/a 60 MINUTE MONEY; and
LAURENT TRUST LT LIMITED

MEMORANDUM AND ORDER

Robert W. Lovegreen, United States Magistrate Judge

    In this matter, the plaintiff has filed a motion entitled "Plaintiff's Emergency Motion to Enforce Settlement Agreement and for Entry of Judgment Pursuant Thereto". The motion requires this court to determine whether this motion is the appropriate method to bring this issue before the court and, if so, whether the terms of the settlement agreement will be enforced. The motion was referred to a Magistrate Judge for hearing and determination. 28 U.S.C. § 636(b)(1)(A); Local Rule of Court LR Cv 72(a). A hearing was held on February 4, 2010. Based upon that hearing and review of the parties' memoranda, plaintiff's motion is granted and the terms of the settlement agreement are enforced as modified with the approval of the parties. Counsel will present the Consent Order and Judgment to the District Court for entry.

Background

    This matter was filed in this court on February 9, 2009 and involves a commercial dispute between these parties. Plaintiff alleges that in June 2005 it entered into a contract with defendant Laurent Trust LT Limited ("Laurent")[1] to provide Laurent with voice messaging services. As time marched on and the national and global economies faltered, Laurent experienced a downturn in its business. Plaintiff's invoices went unpaid and, ultimately, the contract was terminated, but not before Laurent

---

    [1] The court has been informed that Laurent is currently defunct.

1

owed the plaintiff a considerable sum of money. Additionally, defendant Gain was alleged to have given a personal guaranty as to all sums owed by Laurent to the plaintiff.

Following a Rule 16 conference with the district court, the matter was noticed for a settlement conference with this writer on January 20, 2010 and, on that date, the parties and counsel appeared. The settlement conference lasted several hours with discussions between the parties and their counsel with the court present; separate discussions by each party and counsel with the court; and private discussions by each party with its/his counsel. At the conclusion thereof, the parties agreed to a resolution of this matter with the following terms which were disclosed in full to the court:

> 1. The defendants agreed to pay the plaintiff $4,000.00 monthly beginning February 15, 2010 for fifteen months for a total of $60,000.00.
>
> 2. A Consent Judgment in favor of the plaintiff against all defendants in the amount of $110,000.00 would be entered and would be considered fully satisfied if the defendants met their obligation stated above. If any payment was not timely made to the plaintiffs, the Consent Judgment would then prevail and the defendants would owe the plaintiff $110,000.00 minus any payments previously made.
>
> 3. The defendants would be granted 3 days to cure any late payment.
>
> 4. A stipulation stating that the judgment was fully satisfied would be executed and held in escrow until all payments were made after which such stipulation would be filed with the Court.

At the conclusion of the settlement conference, plaintiff's counsel was charged with the task of drafting the settlement documents and forwarding them to the defendants' counsel for review and approval.

On January 21, 2010, plaintiff's counsel forwarded proposed settlement documents to the defendants' counsel for review and approval. Some minor changes were made to allow the defendants to make payments either by check or by wire transfer and to allow payment shortly after the 15th of any month when the 15th came on a week end. Subsequently, on January 28, 2010, defense counsel e-mailed plaintiff's counsel stating that the individual

defendant had informed him that "he cannot afford the settlement that was reached at the mediation, and he wants to talk about different terms." See Ex. A to plaintiff's memorandum.

This motion soon followed. At the February 4, 2010 hearing, the defendants' counsel stated that his clients relied solely upon the Statute of Frauds, R.I.Gen.Laws § 9-1-4(5),[2] to defeat this motion to enforce. Specifically, since there was no signed writing evidencing the terms of the settlement agreement and the time period for completion of the monthly payments is in excess of one year, there could be no enforcement of the terms of the settlement agreement without a violation of the statute of frauds. Defendants also stated that when defendant Gain returned home after the conclusion of the settlement conference, he "realized that a payment of $4,000 per month might be more than his business could generate and, if he failed to do so, the judgment would become $110,000 due immediately, not $60,000 due over 15 months." Defs.' Mem. in Support of Their Objection at 2. Also, defendant Gain "focused on the fact that the Consent Order would impose liability both on Laurent and on Mr. Gain personally." Id. Defendant Gain now wished to challenge any allegation of a personal guaranty as to him rather than solely a corporate guaranty as to Widmore Enterprises. Although offered by the court at this hearing, neither party requested nor desired an evidentiary hearing as to the terms of the settlement agreement.

Unfortunately for defendant Gain, he never raised either of these issues at the settlement conference. His counsel admitted at the February 4, 2010 hearing, quite correctly, that defendant Gain did not raise either issue with the plaintiff or with the Court at the settlement conference - that is, he never expressed his thoughts that the monthly payments were to be made only from his business income and not his personal assets or his thoughts that the guaranty was not a personal one. Since this court is not skilled in mind reading, neither of the plaintiff's thoughts were brought to the attention of the court or the plaintiff and were never part of any settlement discussion. These issues were raised for the first time after the conclusion of the settlement

_____

[2] R.I.Gen.Laws § 9-1-4(5) states:

No action shall be brought:

(5) Whereby to charge any person upon any agreement which is not to be performed within the space of one year from the making thereof;

agreement and after defendant Gain returned home.

Primarily, the defendants rely on their argument under the statute of frauds, i.e., that this settlement agreement cannot be performed within one year from the time of its making and is, therefore, unenforceable.

<u>Discussion</u>

<u>Law on Enforcement of Settlement Agreements</u>

In <u>Fidelity and Guar. Ins. v. Star Equip. Corp.</u>, 541 F.3d 1, 5 (1st Cir. 2008), the Court stated:

> Settlement agreements enjoy great favor with the courts 'as a preferred alternative to costly, time-consuming litigation.'  Thus, a party to a settlement agreement may seek to enforce the agreement's terms when the other party refuses to comply.  Where, as here, the settlement collapses before the original suit is dismissed, the party seeking to enforce the agreement may file a motion with the trial court.  The trial court may summarily enforce the agreement, provided that there is no genuinely disputed question of material fact regarding the existence or terms of that agreement.  When a genuinely disputed question of material fact does exist, the court should hold a hearing and resolve the contested factual issues.

<u>Id.</u> at 5 (citations omitted).

Admittedly, in the <u>Fidelity</u> case, the mediator drafted a hand-written document entitled, "Settlement Memorandum of Understanding."  This document was signed by all parties and the mediator, who then reported to the court that "'significant progress was made towards full settlement of this matter.'" <u>Id.</u> at 4.  However, the First Circuit did not state that the favoring of settlement agreements applied only to those agreements reduced to a hand-written document signed by all parties and the mediator.

In <u>Malave v. Carney Hosp.</u>, 170 F.3d 217 (1st Cir. 1999), a case cited by the <u>Fidelity</u> court, there was no mention of any written settlement agreement, yet the court's reliance on the law mirrored that in the <u>Fidelity</u> case.  Additionally, in this court, Senior District Judge Lagueux, in two decisions, has interpreted the law on enforcement of settlement agreements much the same as the <u>Fidelity</u> and <u>Malave</u> courts and has not restricted enforcement

4

only to written and signed settlement agreements.   <u>See</u> <u>Palmigiano</u> <u>v. Sundlun</u>, 482 F. Supp. 2d 207, 215 (D.R.I. 2007) and <u>U. S. v.</u> <u>Fairway Capital Corp.</u>, 433 F. Supp.2d 226, 244 (D.R.I. 2006).

Since this matter has not been dismissed by the parties, the court finds that the plaintiff has used the proper procedure, a motion to enforce, to bring this issue before the court. Consequently, the court will continue with its analysis of the parties' respective arguments.

<u>Statute of Frauds Analysis</u>

First, we must place the statute of frauds in perspective. What is the purpose of the statute of frauds?

In <u>Smith v. Boyd</u>, 553 A.2d 131 (R.I. 1989), a case involving the sale of real estate, the Rhode Island Supreme Court discussed the statute of frauds and stated "(t)he purpose of the statute was to prevent perjured testimony with respect to oral contracts. Rhode Island's statute of frauds also is to guard against perjury by one claiming under an alleged agreement." <u>Id.</u> at 132. (citations omitted).

Defendants argue that the Rhode Island statute of frauds prevents any enforcement of this settlement agreement because it is oral only and cannot, by its own terms, be performed within one year of its making.  In support of this argument, defendants rely primarily on two decisions.

In <u>E.W.H. & Associates v. Swift</u>, 618 A.2d 1287 (R.I. 1993), the Rhode Island Supreme Court upheld a lower court's ruling refusing to enforce an oral settlement agreement, stating that a settlement agreement must either be placed upon the record or reduced to an agreed upon writing.  <u>Id.</u> at 1289.  This decision is entirely inapposite, as the decision is based upon an interpretation of Rule 1.5 of the Superior Court Rules of Practice,[3] which requires that all settlement agreements be in writing or orally made and assented to in the presence of the court.  In <u>Swift</u>, the settlement agreement was made, if at all, privately, not in the presence of the court, and its terms were in dispute.  There was no discussion as to the applicability of

---

[3] Rule 1.5 of the Superior Court Rules of Practice requires that "[a]ll agreements of parties or attorneys touching the business of the court shall be in writing, unless orally made or assented to by them in the presence of the court when disposing of such business, or they will be considered of no validity."

the statute of frauds to the settlement agreement at issue.

Clearly, the Rules of the Rhode Island Superior Court do not
control events occurring in the federal courts.  The Local Rules
of the United States District Court for the District of Rhode
Island do not contain any requirement that settlement agreements
be in writing or placed upon the record and assented to by the
parties or their counsel.  See LR Cv 39.4(a).

In Rumber v. District of Columbia, 598 F. Supp.2d 97 (D.D.C.
2009), the court declined to enforce an oral settlement agreement
based upon the statute of frauds as any settlement agreement was
not signed by either party.  However, Rumber is quite different
from the instant matter.  In Rumber, the terms of the settlement
agreement clearly stated, and the court so found, that it dealt
with a contract for the sale of real estate and, therefore, the
statute of frauds applied.  Id. at 105.  The statute of frauds
has a specific section dealing with the sale of real estate which
requires a writing.  The instant matter does not deal with the
sale of real estate.  Also, the Rumber court specifically
described a portion of the plaintiffs' case as a "motion to
enforce the disputed settlement agreement."  Id. at 101 (emphasis
added).  In the instant matter, the terms of the settlement
agreement are not disputed.  Lastly, the Rumber decision does not
state that, as present in the instant matter, the settlement
conference relied upon by the plaintiffs was mandated by the
court or that any judicial officer in the United States District
Court for the District of Columbia fully participated in the
negotiations leading up to the settlement agreement and was fully
aware of all the terms of that settlement agreement.  For these
reasons, Rumber, although interesting, is inapposite.

The plaintiff counters with two decisions that are apposite
and persuasive.

In Kohn v. Jaymar-Ruby, Inc., 23 Cal.App.4th 1530 (1st Dist.
1994), plaintiff had sued to reinstate his employment by the
defendant based upon on oral employment contract and an
allegation of age discrimination.  The parties were ordered to
appear at a mandatory settlement conference during which the
parties reached a settlement agreement, the trial date was
vacated, and a date was set for the filing of dismissals.  Later,
the defendant refused to comply and the plaintiff moved to have
judgment entered in accordance with the terms of the settlement
agreement.  That motion was granted and an appeal taken.  The
defendant relied upon the statute of frauds for its non-
compliance as the settlement agreement could not be performed
within one year of its making.  However, the appellate court

6

concluded that:

> ... the statute of frauds is inapplicable to an oral settlement agreement stipulated to by the parties before the court following a judicially mandated and supervised settlement conference. The purpose of the statute of frauds is to prevent fraud and perjury as to extrajudicial agreements by requiring enforcement of the more reliable evidence of some writing signed by the party to be charged. However, the concern addressed by the statute of frauds is not present when, as here, a neutral court participates in the settlement process by assisting the parties to formulate the terms of the settlement. In so doing the court assures itself that the parties are being truthful and acting in good faith, and also that they each comprehend the scope of the agreement.
>
> In addition, application of the statute of frauds to judicially supervised settlements would effectively eliminate the elaborate settlement machinery established by the California Rules of Court, the Standards of Judicial Administration and existing case law declaring the public policy that encourages settlement of litigation. The statute of frauds was never intended to bar enforcement of judicially supervised settlements.

Id. at 1534-35 (citations omitted).

    In Rose v. Mavrakis, 799 N.E.2d 469 (Ill. App. Ct. 2003), the question raised was "whether a settlement agreement reached during a court-ordered settlement conference conducted in the trial judge's chambers, the terms of which are stated in the judge's presence but neither stated in open court nor transcribed, is exempted from the writing requirement of the Frauds Act where that requirement would otherwise be applicable." Id. at 477. The court answered in the affirmative relying upon the decision and analysis in the Kohn case, supra.

> The purpose of the writing requirement of the Frauds Act is not to enable parties 'to repudiate contracts that they have in fact made; it is only to prevent the fraudulent enforcement of asserted contracts that were in fact not made.' When parties reach a settlement agreement during a court-mandated settlement conference conducted in the judge's chambers and state the terms

7

of that agreement in the judge's presence, there is no
danger of enforcement of a contract which was, in fact,
never made.  This is so even if no transcript or
written order memorializing the agreement is prepared
on the date the agreement is reached.  The possibility
of fraud is negated in that the trial judge can, as
here, resolve any disputes as to whether an agreement
was in fact reached or the content of that agreement.

Id. at 478 (citations omitted).

Neither party has presented to the court any Rhode Island
decision, federal or state, that applied the statute of frauds to
any settlement agreement mandated by and conducted before a
judicial officer.  The court's own research has found none.

Here, the plaintiff's emergency motion to enforce the
settlement agreement reached on January 20, 2010 should be
granted.  As in Kohn and Rose, here, there was a court ordered
settlement conference scheduled and the parties were required to
attend with counsel of record.  Indeed, the matter had been
continued once to accommodate the defendant Gain's schedule as he
is a citizen and resident of the United Kingdom and was expected
to be in the United States during January 2010.  The settlement
conference was held in judicial chambers before this writer who
participated fully in the negotiations with both parties and
counsel present initially and then separately with each party and
its/his counsel.  At times and at the request of a party or
its/his counsel, this court permitted private discussions between
them, but this court participated in most negotiations.  When the
settlement agreement was reached, this court knew all of the
terms thereof and was satisfied that each party and counsel were
equally informed and fully comprehended those terms.  At the
conclusion of the settlement conference, this court again met
jointly with both parties and counsel to determine who would
draft the settlement documents and to urge quick completion
thereof.  Additionally, this court made notes of the negotiations
and the final terms of the settlement agreement and is confident
that the settlement terms contained in the plaintiff's settlement
documents are accurate and complete.  This court is also
satisfied that counsel for both parties made minor additions to
the settlement terms[4] and both agreed to them.

---

[4] At the hearing on this motion, counsel advised the court
that two additions were made to the settlement terms: to permit
monthly payments by check as well as wire transfer and to permit
a short period of time after the monthly payment was due if the

Conclusion

Under the circumstances of this matter as stated above, the court finds that the statute of frauds is inapplicable and unnecessary where, as here, no sale of real estate is involved; there has been a judicially mandated and supervised settlement conference where the judicial officer was fully engaged in the negotiations and as to all terms thereof; where the judicial officer was satisfied that all parties and counsel were fully informed and comprehended all terms of the settlement agreement; and where neither party nor counsel dispute the actual terms of the settlement agreement. In this matter, defendant Gain simply had a change of mind a few days after the settlement agreement was reached. That simply is an insufficient basis to support a denial of enforcement of the terms of the settlement agreement.

Since this matter does not involve the sale of real estate, this court need not address whether the statute of frauds requires a greater restriction on the enforcement of oral settlement agreements. That issue is left to another day when an appropriate and relevant matter is before the court.

The plaintiff's motion to enforce the settlement agreement and entry of judgment pursuant thereto is granted. However, with the agreement of counsel at the hearing, the proposed consent order will be revised to state the first monthly payment date to be March 15, 2010 and the last monthly payment date to be May 15, 2011.

Counsel shall present the judgment and the consent order to Chief Judge Lisi forthwith for entry.

So Ordered.

Robert W. Lovegreen
United States Magistrate Judge
February 25, 2010

Deputy Clerk

---

15th of any month fell on a non-business day. There is no dispute as to these additions.

9